## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TASHA RATHBUN, individually and as the personal
representative of the Estate of Scarlett Rose Elmore,

      Plaintiff,

v.                             No. CIV 22-00053 RB/KRS

DARLA BANNISTER, RN, TODD BANNISTER, RN,
BILLY MASSINGILL, BRIANNA NOWLIN, EDDY
COUNTY BOARD OF COMMISSIONERS, BRIAN
RAYROUX, RN, EMMA RENTSCHLER, RN,
MARLENA PELL, RN, JANE AND JOHN DOES 1–10,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

Tasha Rathbun was booked into the Eddy County Detention Center (ECDC or the jail) as a pretrial detainee on August 27, 2018. Unbeknownst to Rathbun, she was approximately 18 weeks pregnant. Rathbun has a medical condition that requires timely prenatal care. Rathbun alleges that she made several health complaints while she was in jail, but the jail's medical staff largely ignored her complaints and failed to provide adequate medical care. And despite jail policy that required incoming inmates be given a pregnancy test, the jail failed to administer one to Rathbun and her pregnancy went undetected. Rathbun was released on November 26, 2018, and gave birth to a daughter, Scarlett Rose Elmore, on December 17, 2018. Scarlett lived for several minutes before passing away. Rathbun alleges that Scarlett's death is the consequence of the jail's failure to discover her pregnancy and provide appropriate prenatal care.

Rathbun filed a lawsuit naming the Eddy County Board of Commissioners (the Board), the warden of the jail, and several medical and jail staff members. Defendants Billy Massingill, Todd Bannister, Brianna Nowlin, Brian Rayroux, Marlena Pell, and the Board (the County Defendants)

move to dismiss Rathbun's claims against them. The Court will grant in part the motion as outlined in this Opinion.

## I.      Statement of Facts[1]

Rathbun and her deceased daughter were New Mexico residents. (Doc. 9 ¶ 3 (Am. Compl.).) Rathbun brings this suit on her own behalf and as personal representative of her daughter's Wrongful Death Estate. (*Id.*; *see also* Doc. 37.) She names several defendants. Darla Bannister served as the Health Services Administrator for Eddy County and was responsible both for providing medical services to inmates at the jail and for supervising the jail's medical staff. (Doc. 9 ¶ 4.) Todd Bannister was the Eddy County Medical Director and was also responsible for providing medical services to inmates at the jail and for supervising the jail's medical staff. (*Id.* ¶ 5.) Billy Massingill was the warden of the jail and was responsible for supervising jail employees. (*Id.* ¶ 6.) Emma Rentschler and Brian Rayroux were registered nurses employed by the jail to provide medical care to inmates. (*Id.* ¶ 7.) Brianna Nowlin, a jail employee, screened inmates for booking. (*Id.* ¶ 8.) Rathbun does not detail Marlena Pell's position, but she was presumably a staff member at the jail. (*See id.* ¶ 48.) The Board contracted with Darla Bannister to fulfill her role at the jail. (*Id.* ¶ 9.) The Board employed and supervised the other County Defendants. (*Id.*)

According to the Amended Complaint, the jail's internal policies require all inmates to be screened for pregnancy within 72 hours of booking. (*Id.* ¶ 21.) Rathbun was booked into the jail on August 27, 2018. (*Id.* ¶ 27.) She alleges that she was not appropriately screened, because she was not asked about "her last menstrual period, current gynecological problems and whether she may be pregnant; nor was any pregnancy test provided or administered." (*Id.* ¶ 29.) Shortly after she was booked into the jail, "Rathbun began complaining of vaginal discharge, heartburn, flank

---

[1] The Court recites all factual allegations in a light most favorable to Rathbun, the non-moving party.

pain, increased urination, low blood sugar, and low blood pressure—signs which should have prompted Defendants to investigate whether she was pregnant." (*Id.* ¶ 31.) Rathbun alleges that she "consistently complained of these same symptoms" for her entire time at the jail. (*Id.* ¶ 33.) She also complained of extreme abdominal pain that rendered her unable to lay on her left side, unable to stand on her own feet, and unable to walk from her cell to the medical center for assessment. (*Id.* ¶¶ 35–36.)

At times, "Rathbun was able to slowly walk herself to be seen by ECDC nursing staff and . . . Darla Bannister." (*Id.* ¶ 38.) For example, on September 5, 2018, Darla Bannister and Nurse Doe 1 treated Rathbun for the above noted symptoms but failed to take Rathbun's vital signs or a medical history, to provide a pregnancy test, or to determine whether she needed a referral to another provider. (*Id.* ¶¶ 38–39.) They diagnosed Rathbun with a UTI, prescribed an antibiotic,[2] and scheduled Rathbun to return in three days. (*Id.*) Medical staff did not see Rathbun in three days, because she was "denied treatment based on her inability to walk to the medical center in ECDC." (*Id.* ¶¶ 40–41.)

At a later medical visit, Rathbun complained of the same symptoms, and Darla Bannister and Nurse Doe 2 diagnosed gastroesophageal reflux disease (GERD) and prescribed Prilosec. (*Id.* ¶¶ 42–43.) "Between September 12, 2018, and October 19, 2018, Plaintiff Rathbun continued to writhe in pain and . . . complain" of the same symptoms. (*Id.* ¶ 44.) Defendants ignored her complaints. (*Id.* ¶ 45.) On October 19, 2018, Rathbun "requested medication for her symptoms and pain." (*Id.* ¶ 46.) Without referring her to nursing staff, Defendant Marlena Pell denied her request unless Rathbun showed her that she could get up on her feet. (*Id.* ¶ 48.) Rathbun was

---

[2] Defendants prescribed Macrobid. (*See* Am. Compl. ¶ 39.) *See also* Macrobid, Uses, Side Effects, and More, https://www.webmd.com/drugs/2/drug-14376/macrobid-oral/details (last visited Oct. 27, 2022).

ignored until November 6, 2018, when her "complaints of pain within her torso were excruciating." (*Id.* ¶¶ 49–50.) On November 6, Defendant Emma Rentschler saw Rathbun and prescribed an antibiotic for a UTI but failed to take vital signs or a history of symptoms, provide a pregnancy test, or determine whether Rathbun needed a referral. (*Id.* ¶ 53.)

Rathbun continued to complain of the same symptoms through November 26, 2018, when she was scheduled to be transferred to another facility. (*Id.* ¶ 54.) On that date, Defendants Darla Bannister and Brian Rayroux saw Rathbun. (*Id.* ¶ 55.) They disregarded her health concerns and failed to take vital signs and instead cleared her for transport. (*Id.* ¶¶ 57–58.) "Rathbun was transported to the other facility and was released in less than 48 hours." (*Id.* ¶ 59.)

On December 17, 2018, "Rathbun gave birth prematurely to" her daughter, who lived "for several minutes before passing." (*Id.* ¶ 60.) "It is estimated that Scarlett Rose Elmore was between 35–37 weeks old at the time of her death." (*Id.* ¶ 61.) Rathbun estimates that she was 18 weeks pregnant upon her arrival at ECDC. (*Id.* ¶ 62.) "Rathbun suffers from a condition known as incompetent cervix[,] which requires medical intervention to carry a fetus to full term." (*Id.* ¶ 23.) This intervention, a "[c]ervical cerclage[,][3] has an incredibly short window and must be done within 14–23 weeks of pregnancy." (*Id.* ¶ 25.)

Rathbun asserts that Defendants knew of and disregarded her serious medical condition throughout her stay at the jail. (*Id.* ¶ 63.) She alleges that her daughter's premature birth and death were the result of Defendants' "refusal and failure to provide prompt, adequate medical treatment" including a cervical cerclage. (*Id.* ¶¶ 65–67.)

---

[3] A cervical cerclage is a surgical procedure "in which the cervix is sewn closed during pregnancy" to prevent premature labor due to an incompetent cervix. Cervical Cerclage, American Pregnancy Association, https://americanpregnancy.org/healthy-pregnancy/pregnancy-complications/cervical-cerclage/ (last visited Oct. 27, 2022).

Rathbun asserts that in 2016, "Darla Bannister submitted a Request for Proposal ECDC Medical Director Position[,]" in which "she informed [the Board] of concerns . . . that ECDC has failed to provide treatment of STDs and gynecological care to inmates[,]" including pregnancy tests. (*See id.* ¶¶ 68–70.) She also asserts that from 2015–2019, Darla Bannister, Todd Bannister, the Board, and Massingill grossly under-purchased pregnancy tests for the number of women entering ECDC. (*Id.* ¶¶ 71–72.) Rathbun alleges that "Darla Bannister, Todd Bannister, [the Board] and Massingill's [sic] administration of ECDC was motivated by monetary interests . . . ." (*Id.* ¶ 80.)

Rathbun brings the following claims:

Count I: 42 U.S.C. § 1983 Cruel and unusual punishment under the Eighth Amendment[4] against Darla Bannister, Todd Bannister, Brian Rayroux, Emma Rentschler, Marlena Pell, Brianna Nowlin, and Does 1–10[5] (*id.* ¶¶ 81–88);

Count II: Substantive due process claim under the Fourteenth Amendment against Darla Bannister, Todd Bannister, Brian Rayroux, Emma Rentschler, Marlena Pell, Brianna Nowlin, and Does 1–10 (*id.* ¶¶ 89–95);

Count III: State law claim for professional negligence against Darla Bannister, Todd Bannister, Brian Rayroux, Emma Rentschler, Marlena Pell, and Does 1–5 (*id.* ¶¶ 96–104);

Count IV: 42 U.S.C. § 1983 *Monell* claim against the Board, Todd Bannister, Massingill, and Darla Bannister (*id.* ¶¶ 105–17);

Count V: Claim of negligence per se against Darla Bannister (*id.* ¶¶ 118–25);

---

[4] Rathbun states that Count I is brought pursuant to the Eighth Amendment, but as a pretrial detainee, her claim is properly brought under the Fourteenth Amendment. (*See* Am. Comp. at 13.)

[5] Rathbun asserts that Does 1–5 are healthcare personnel and Does 6–10 are corrections personnel. (Am. Compl. ¶¶ 10–11.)

Count VI: Claim of breach of contract against Darla Bannister (*id.* ¶¶ 126–38);

Rathbun also seeks damages on behalf of her daughter's Estate (*see id.* ¶¶ 139–41).

The County Defendants move to dismiss all claims brought against them. (Doc. 13.) Before turning to the substance of their motion, the Court wishes to address the County Defendants' recitation of certain allegations that are not contained within the Amended Complaint. (*See id.* at 2.) As is the Court's duty, the undersigned considered only those allegations Rathbun alleged in her Amended Complaint and took no notice of the Defendants' additional background. The Court reminds counsel for the County Defendants to reserve such allegations for later motion practice, as they are inappropriately presented in this motion to dismiss.

## II.   Legal Standards

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

### B.   Qualified Immunity

"In assessing a qualified immunity defense" in the context of a motion to dismiss, the Court "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged

conduct." *Crall v. Wilson*, 769 F. App'x 573, 575 (10th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may address the prongs of this analysis in either order; if the plaintiff fails to meet her burden on either prong, the defendant prevails. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied Cummings v. Bussey*, 140 S. Ct. 81 (2019).

### III. The County Defendants are entitled to qualified immunity on Count I.

Rathbun alleges that Darla Bannister, Todd Bannister, Brian Rayroux, Emma Rentschler, Marlena Pell, Brianna Nowlin, and Does 1–10 were deliberately indifferent to her serious medical needs by denying her medical care and/or providing inadequate medical care. (*See, e.g.*, Am. Compl. ¶¶ 57, 64–67, 81–88.) The Tenth Circuit has held that "[u]nder the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment." *Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 868 (10th Cir. 1997) (quotation omitted). Thus, Rathbun's "inadequate medical attention claim must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)." *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (quotation omitted). This analysis is two-pronged: an objective component that is met if the inmate can show serious medical needs, *Sparks v. Singh*, 690 F. App'x 598, 603–04 (10th Cir. 2017); and a subjective component that "requires the plaintiff to present evidence of the prison official's culpable state of mind[,]" *id.* at 604 (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The County Defendants argue that Rathbun has not alleged facts to show either component. (Doc. 13 at 8–9.)

#### A. Objective Component

A sufficiently serious medical need is defined "as 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'"[6] *Mata*, 427 F.3d at 753 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209(10th Cir. 2000)) (subsequent citations omitted). The County Defendants argue that Rathbun's symptoms—vaginal discharge, heartburn, flank pain, increased urination, low blood sugar, and low blood pressure—were not so obvious that a layperson would not know that she required prenatal care or a cervical cerclage. (Doc. 13 at 8–9.) They assert that neither she nor any defendant knew that she was pregnant or required prenatal care or a cervical cerclage. (*Id.* at 9.) Thus, they contend that she cannot establish the objective component of her claim. (*Id.*)

The Court finds that the County Defendants take too narrow a view of Rathbun's allegations. The complaint appears to identify two separate harms: both the pain and suffering Rathbun endured when Defendants allegedly ignored her symptoms (at times) and provided inadequate medical care (at other times); and the death of her daughter. (*See, e.g.*, Am. Compl. ¶¶ 85–88; *see also* Doc. 28 at 8–9 (describing her "severe debilitating and disabling pain which resulted in her inability to ambulate") (citing Am. Compl. ¶¶ 32–33, 35–37, 54–56).) The Court finds that excruciating pain that prevents an individual from laying down or walking is sufficiently serious to satisfy the objective prong, as is, undoubtedly, the death of Rathbun's daughter.

## B. Subjective Component

The Court must next inquire as to whether Rathbun alleges facts to show the subjective

---

[6] Rathbun asserts that "[a] medical condition is sufficiently serious . . . if it is one 'that a reasonable [medical professional] or patient would find important and worthy of comment or treatment . . . [or if it] significantly affects an individual's daily activities or . . . [includes] the existence of chronic and substantial pain.'" (Doc. 28 at 8 (quotation omitted).) Rathbun attributes this language to the Tenth Circuit's decision in *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996), but her attribution is misleading. This language comes from a Ninth Circuit case that the *Riddle* court cited parenthetically. *See Riddle*, 83 F.3d at 1202 (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). The Tenth Circuit explicitly defined a serious medical need in the text of its opinion, however, as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

prong. With respect to each of Rathbun's claimed harms, she must establish "that the defendants knew [s]he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Tanner v. McMurray*, 429 F. Supp. 3d 1047, 1209 (D.N.M. 2019), *rev'd & vacated in part on other grounds*, 989 F.3d 860 (10th Cir. 2021) (quoting *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)). Critically, "[t]he subjective component also requires that the charged officials disregard the specific harm claimed by the [inmate]." *Id.* at 1209–10 (citing *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009); *Estate of Hocker v. Walsh*, 22 F.3d 995, 997–1000 (10th Cir. 1994) (holding that plaintiffs had to show detention center defendants who admitted intoxicated individuals were deliberately indifferent to the specific risk of the intoxicated decedent's suicide, and not merely to the risk of her intoxication)).

The County Defendants contend that Rathbun fails to allege any facts to show their culpable state of mind, alleging only that they "failed to give her a pregnancy test." (Doc. 13 at 9.) To the extent that the claimed harm involves the death of Rathbun's child, the Court agrees—Rathbun cites no allegations to demonstrate that any defendant knew of or consciously disregarded a substantial risk of such a harm. *See Mata*, 427 F.3d at 752. This is particularly so where Rathbun herself had no idea she was pregnant. And while Rathbun argues that her symptoms "should have prompted [Defendants] to investigate" (Doc. 28 at 11), this allegation does nothing to establish the culpable state of mind necessary to meet the subjective prong. Rathbun fails to make out a claim for deliberate indifference based on the death of her daughter, and the Court will grant the motion to dismiss Count I on this basis.

Rathbun's allegations of severe pain also fail to meet the objective prong. Rathbun vaguely alleges that unnamed "defendants" ignored her complaints of severe pain. (*See, e.g.* Am. Compl. ¶¶ 37 ("Defendants denied [her] any opportunity to be seen [on August 31, 2018,] stating that she

refused to walk herself to the medical center in ECDC"), 41 (Rathbun was not seen in follow-up after her September 5, 2018 because she was "denied treatment based on her inability to walk to the medical center in ECDC"), 44–45 (Rathbun's complaints of symptoms "went ignored" between September 12 and October 19), 49 (Rathbun's complaints were "ignored until November 6, 2018"), 52 (Defendants "punished" Rathbun during rounds if she "was unable to get herself up as the result of her pain" by placing her "alone in a cell without access to other inmates or officers and unable to request medical assistance")).) These allegations of nameless defendants ignoring her pain are insufficient to show that the County Defendants named in Count I knew of and consciously disregarded her severe pain. *See, e.g.*, *Strain v. Regalado*, 977 F.3d 984, 995 n.8 (10th Cir. 2020), *cert. denied*, 142 S. Ct. 312 (2021).

Rathbun names a specific defendant in only *one* allegation regarding her severe pain: she states that Marlena Pell denied her additional medication unless she got on her feet. (*Id.* ¶¶ 46–48.) This single allegation is not enough to show that Marlena Pell knew of and disregarded a substantial risk regarding Rathbun's severe pain.

Because Rathbun has not successfully shown that any County Defendant violated her constitutional rights, the Court finds they are entitled to qualified immunity with respect to Count I and will grant the motion to dismiss on this claim. *See Crall*, 769 F. App'x at 575; *Cummings*, 913 F.3d at 1239. Count I remains only with respect to Darla Bannister, as she did not join in this motion.

## IV.    The County Defendants are entitled to qualified immunity on Count II.

Rathbun alleges that Darla Bannister, Todd Bannister, Brian Rayroux, Emma Rentschler, Marlena Pell, Brianna Nowlin, and Does 1–10 violated her substantive due process rights under the Fourteenth Amendment by "plac[ing] a substantial obstacle in the path of [her] choice to carry

her pregnancy to term and to give birth to her child." (Am. Compl. ¶ 92.) Rathbun's claim is a

novel one. She asserts that a woman has a "fundamental liberty interest in choosing to carry her

pregnancy to term and become a parent." (Doc. 28 at 12.) She argues that under the holding of

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), the Court

should apply the "undue burden" standard to a woman's right to continue her pregnancy until birth.

(Doc. 28 at 12–13.) This standard, she contends, affords her "the right to be free from unwarranted

governmental intrusion into matters so fundamentally affecting a person as the decision to bear or

beget a child." (*Id.* at 13 (quoting *Casey*, 505 U.S. at 875 (quotation marks omitted)).)

Rathbun argues that the County Defendants "interfered with [her] decision to carry her

child to term by creating obstacles which prevented her from investigating the cause of her serious

medical conditions . . . , obtaining a pregnancy test, or seeking obstetric care." (*Id.* at 14.) The

County Defendants argue that they are entitled to qualified immunity because Rathbun fails to

show that the law was clearly established on this issue. (Doc. 13 at 9–10, 15.) The Court agrees.

Rathbun points to no authority, from the Tenth Circuit or anywhere, that stands for the proposition

that failing to test for or recognize pregnancy under these circumstances amounts to interference

with a woman's right to bear a child. (*See* Doc. 28 at 23–24 (citing *Skinner v. Oklahoma ex rel.*

*Williamson*, 316 U.S. 535 (1942) (finding that Oklahoma's Habitual Criminal Sterilization Act

violated the equal protection clause of the Fourteenth Amendment); *Whole Woman's Health v.*

*Hellerstedt*, 579 U.S. 582 (2016) (regarding abortion restrictions); *Santosky v. Kramer*, 455 U.S.

745 (1982) (regarding the severance of parental rights)).) Because Rathbun fails to show that it

was clearly established that the County Defendants' conduct would violate her constitutional

rights, they are entitled to qualified immunity. The Court will grant the motion and dismiss Count

II as to the County Defendants. Count II remains as to Darla Bannister only.

**V.      The Court will dismiss Count III and the claim for damages for the Estate as to the County Defendants.**

In Count III, Rathbun brings a state law claim for professional negligence or medical malpractice against Darla Bannister, Todd Bannister, Brian Rayroux, Emma Rentschler, Marlena Pell, and Does 1–5. (Am. Comp. ¶¶ 96–104.) Rathbun asserts that "[t]he acts and omissions of all nurses and staff who provided care to [her] are directly attributable to Darla Bannister[,]" who "had a duty . . . to possess and apply the standards of knowledge, skill, and care for her respective professional discipline." (*Id.* ¶¶ 97, 101.) She claims that "Darla Bannister breached her duties by failing to provide . . . Rathbun with timely and appropriate health care." (*Id.* ¶ 102.)

The County Defendants assert that both Count III and the claim for damages due to Scarlett's death are brought pursuant to the New Mexico Tort Claims Act (NMTCA). (Doc. 13 at 6.) The NMTCA provides

> the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M. Stat. Ann. § 41-4-17. Rathbun does not cite the NMTCA in her Amended Complaint, but she does not disagree that the NMTCA provides the exclusive remedy against the County Defendants for the medical malpractice claim or for the wrongful death action. (*See* Am. Compl.; *see also* Doc. 28 at 5–6.) *See also Maestas v. Zager*, 152 P.3d 141 (N.M. 2021) (analyzing claim of medical malpractice brought under the NMTCA); *Chavez v. Regents of Univ. of N.M.*, 711 P.2d 883, 885 (N.M. 1985) (noting that NMTCA "provides 'the *exclusive* remedy against a governmental entity or public employee'" in the context of a wrongful death suit) (quoting § 41-4-17).

12

The County Defendants argue that Rathbun's NMTCA claims are barred by the statute of limitations. (Doc. 13 at 6–7.) The NMTCA provides that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death . . . ." N.M. Stat. Ann. § 41-4-15(A). The New Mexico Supreme Court has held that in a suit for an infant's death, the statute of limitations on the infant's cause of action begins to run on the date of death. *Regents of Univ. of N.M. v. Armijo*, 704 P.2d 428, 430 (N.M. 1985). "Therefore," the County Defendants argue, "the personal representative [of Scarlett's Estate] had two years from [Scarlett's] death in which to file the present action." (Doc. 13 at 6 (citing *Armijo*, 704 P.2d at 430).) Scarlett passed away on December 17, 2018, and Rathbun filed this lawsuit on December 17, 2021. (*See* Doc. 1-A.) Thus, Rathbun filed the lawsuit after the two-year statute of limitations ran.

Rathbun does not argue that her claims under the NMTCA are timely. (*See* Doc. 28 at 5–6.) Instead, she argues that the statute of limitations argument is an affirmative defense that is more appropriately pled in an "answer, not argued on a motion to dismiss." (*Id.* at 6 (citing Fed. R. Civ. P. 8(c); *Vigil v. Doe*, 405 F. Supp. 3d 1058, 1067 (D.N.M. 2019)).) Yet in *Vigil v. Doe*, the court noted that a defendant may raise an affirmative defense, such as the statute of limitations, "where the facts establishing the affirmative defense are apparent on the complaint's face." 405 F. Supp. 3d at 1067 (citing *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)). "The defense of limitations is the affirmative defense that the complaint's uncontroverted facts is most likely to establish." *Id.* (citation omitted). "If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6)." *Id.* (citing *Rohner v. Union P. R. Co.*, 225 F.2d 272, 273–75 (10th Cir. 1955)) (subsequent citations omitted). "The plaintiff may counter this motion with an assertion that a

different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute." *Id.*

Rathbun asserts that the County Defendants may be liable other than as public employees pursuant to the NMTCA. (Doc. 28 at 6.) She states that under state common law, actions for medical malpractice must generally be brought within three years. (*See id.* (citing N.M. Stat. Ann. §§ 37-1-8, 41-5-1–29).) Defendants reply that Rathbun's own allegations foreclose this argument. (Doc. 34 at 5.) Rathbun alleges in the Amended Complaint that Todd Bannister was, "[a]t all relevant times, . . . acting under the color of law within the scope of [his] duties and employment . . . for Eddy County." (Am. Compl. ¶ 5.) Similarly, she asserts that "Billy Massingill was at all relevant times . . . an employee acting as Warden of [ECDC] . . . ." (*Id.* ¶ 6.) She alleges that Brian Rayroux and Emma Rentschler "were at all times nurses employed by ECDC and required to provide medical care and treatment to inmates" (*id.* ¶ 7); that "Brianna Nowlin was at all times employed by ECDC and required to screen inmates for booking" (*id.* ¶ 8); and that Does 1–10 were "[a]t all relevant times . . . acting under the color of law within the scope of their duties and employment as health care [and corrections] personnel at ECDC (*id.* ¶¶ 10–11).[7] Finally, Rathbun alleges that the Board is a governmental entity. (*Id.* ¶ 9.)

It is clear from the face of the Amended Complaint that Rathbun names the County Defendants in their capacities as either a governmental entity (the Board) or public employees (the individuals). As New Mexico's "general policy is that 'governmental entities and public employees shall only be liable within the limitations of the [NMTCA,]'" *Loya v. Gutierrez*, 350

---

[7] Rathbun includes only one allegation against Marlena Pell: that she denied Rathbun's request for "additional medication . . . unless . . . Rathbun was able to show that she was able to get up on her feet . . . ." (Am. Compl. ¶ 48.) As Rathbun names the other defendants in their capacities as public employees, the Court presumes for purposes of this motion that she intended to name Marlena Pell in the same way.

P.3d 1155, 1165 (N.M. 2015) (quoting N.M. Stat. Ann. § 41-4-2(A)), the Court finds it appropriate

to grant the motion to dismiss on this issue and dismiss with prejudice Count III and the claim for

damages for the Estate of Scarlett Rose Elmore as to the County Defendants.

## VI.   The Court will deny the County Defendants' motion to dismiss Count IV.

In Count IV, Rathbun brings a *Monell* claim against the Board, Todd Bannister, Billy

Massingill, and Darla Bannister. (Am. Compl. ¶¶ 105–17.) She asserts that these Defendants failed

to adequately hire and train employees to follow policies that required incoming inmates to be

given a pregnancy test within the first 72 hours of booking. (*Id.* ¶¶ 111, 114.) She further asserts

that they "ratified a custom of not maintaining sufficient diagnostic equipment diagnostic tools

[sic], like pregnancy tests to enable employees to screen inmates in accordance with ECDC's

policies." (*Id.* ¶ 115.)

Rathbun does not allege that Todd Bannister or Billy Massingill "personally participated

in an underlying constitutional violation[,]" so any claim she brings against either is "predicated

on [their] maintaining a policy or custom that resulted in the underlying violation." *See Burke v.

Regalado*, 935 F.3d 960, 999 (10th Cir. 2019). As a result, "the elements for supervisory and

municipal liability are the same in this case." *See id.* To hold Todd Bannister, Billy Massingill, or

the Board liable, Rathbun must show: (1) a policy or custom; (2) "a causal relationship between

the policy or custom and the underlying violation[;] and ([3]) deliberate indifference." *Id.* (citation

omitted).

The Tenth Circuit has found that a policy or custom may take one of five forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a
> widespread practice that, although not authorized by written law or express
> municipal policy, is so permanent and well settled as to constitute a custom or usage
> with the force of law; (3) the decisions of employees with final policymaking
> authority; (4) the ratification by such final policymakers of the decisions—and the

basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). The third and fifth forms are at issue here, as Rathbun alleges a policy or custom of deliberately under-buying pregnancy tests necessary for the number of incoming inmates and of failing to train staff to adequately screen incoming inmates for pregnancy. (*See* Doc. 28 at 16–17.). The Court will look at each theory in turn.

**A. Rathbun adequately alleges that the Board, Todd Bannister, and Billy Massingill maintained an informal policy or custom of under-purchasing pregnancy tests.**

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986)). "Specifically, when a municipal official who is 'responsible for establishing final policy with respect to the subject matter in question' makes 'a deliberate choice to follow a course of action . . . from among various alternatives' municipal liability will attach to that decision." *Thomas v. City of Snyder, Okla.*, 103 F.3d 145 (10th Cir. 1996) (quoting *Pembauer*, 475 U.S. at 483–84) (subsequent citation omitted). "Thus, the key inquiry in determining whether municipal liability attaches to an official's actions is whether that official has the policymaking authority necessary to make his acts those of the municipality." *Id.*

Here, Rathbun asserts that Darla Bannister, Todd Bannister, Billy Massingill, and the Board were responsible for procuring pregnancy tests for the jail and purposefully underpurchased the number of tests necessary for incoming inmates. (Am. Compl. ¶¶ 71–72, 79–80, 115.) She

offers numbers to show that Defendants knowingly purchased an inadequate number of tests from 2015–2019. (*See id.* ¶¶ 71–72.) Defendants argue that Rathbun has not alleged that they "made a deliberate choice to follow a course of action . . . from among various alternatives . . . ." (Doc. 34 at 9.) Yet the alternative is implied: Defendants could have purchased enough pregnancy tests to ensure that all incoming inmates could be tested. The Court will deny the motion to dismiss on this basis.

**B. Rathbun adequately alleges that the Board, Todd Bannister, and Billy Massingill maintained an informal policy or custom of failing to train staff to screen for pregnancy.**

Rathbun asserts an informal policy or custom by alleging that Darla Bannister, Todd Bannister, Billy Massingill, and the Board were responsible for and failed to adequately train ECDC staff to perform pregnancy tests on incoming inmates within 72 hours of arrival at the jail. (Am. Compl. ¶¶ 14, 111, 114.) "In the absence of an explicit policy or an entrenched custom, '[inadequate] training may serve as a basis of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to the rights of persons with whom the [actors] come into contact.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Plaintiffs may demonstrate deliberate indifference by showing that a "municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999)). Generally, a single incident—like the one here—is insufficient to impose liability. *See id.* However, the Tenth Circuit has held that under limited circumstances in failure to train claims, "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Id.* (quoting

*Barney*, 143 F.3d at 1307). "The official position must operate as the 'moving force' behind the violation, and the plaintiff must demonstrate a 'direct causal link' between the action and the right violation." *Id.* (quoting *Brown*, 520 U.S. at 399). "That is, '[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?'" *Id.* (quoting *City of Canton*, 489 U.S. at 391).

Reading the complaint in a light most favorable to Rathbun, it is plausible that failure to provide necessary prenatal care is a plainly obvious consequence of failing to adequately train staff to determine whether incoming inmates are pregnant, particularly if the facility did not have enough pregnancy tests on hand. And while the Court has found that the County Defendants did not violate Rathbun's Fourteenth Amendment rights, it has made no such determination with respect to Darla Bannister. In short, Rathbun's *Monell* claim is sufficient to withstand the motion to dismiss.

**THEREFORE,**

**IT IS ORDERED** that the County Defendants' Motion to Dismiss Plaintiff's Complaint is **GRANTED in part**: the Court will **DISMISS** Counts I, II, III, and the claim for damages for the Estate of Scarlett Rose Elmore against the County Defendants only; these claims remain against Darla Bannister. The Court will **DENY in part** the motion: Count IV remains in full.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE